UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-57-9 (PAM/ECW)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

UBAH HASSAN HAGI,

        Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and defendant Ubah Hassan Hagi (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges.** The defendant agrees to plead guilty to Count One of the Indictment, which charges the defendant with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349. The defendant fully understands the nature and elements of the crime with which she has been charged. At the time of sentencing, the government agrees to move to dismiss the remaining counts of the Indictment.

2. **Factual Basis.** The defendant is pleading guilty because she is in fact guilty of Count One of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

1



SCANNED
AUG 1 5 2022
U.S. DISTRICT COURT ST. PAUL

From at least in or about August 2016 through in or about December 2017, the defendant worked as an interpreter for Arch Language Network ("Arch"). Arch was an approved provider that billed services to the Minnesota Medicaid program for interpreter services provided to Medicaid beneficiaries by its interpreters. The defendant, through Arch, billed the Minnesota Medicaid program for interpretation services that she purportedly provided in the State of Minnesota to clients of Live Better LLC. Live Better LLC was a Minnesota-based company that advertised that it provided services to patients in their homes, including Adult Rehabilitative Mental Health Services.

The defendant agreed with her co-conspirators, including mental health practitioners Z.L.R. and V.B.K., to bill the Minnesota Medicaid program for mental health services and related interpretation services that were not actually rendered to Medicaid beneficiaries. Specifically, the defendant conspired with mental health practitioners who submitted falsified claims for reimbursement to the Minnesota Medicaid program for mental health services appointments provided to Live Better clients, including those who were Medicaid beneficiaries. The defendant prepared, signed, and submitted falsified interpreter service verification forms for interpretation services purportedly provided during the mental health services appointments. Some of the claims for reimbursement for interpretation services that the defendant submitted were false and fraudulent because the defendant did not actually render the interpretation services described in the claims form, including the hours of interpreting services actually provided.

For example, on or about March 31, 2017, the defendant caused to be submitted an electronic submission of interpretation services claim for patient O.T. to UCare for services purportedly rendered on February 8, 2017. The defendant admits that she did not provide the interpretation services described in the claims form for patient O.T. on February 8, 2017, and the claim for reimbursement that she submitted to UCare through Arch was false and fraudulent.

The defendant admits that each time she submitted a false and fraudulent claim for reimbursement for interpretation services, she transmitted and caused to be transmitted signs, signals, and pictures by means of wire communications in interstate commerce for the purpose of executing the scheme and artifice in violation of Title 18, United States Code, Section 1343.

Due to the defendant's false and fraudulent submissions, the Minnesota Medicaid program remitted payment to Arch via electronic funds transfer, and the defendant was then paid for interpretation services that were not actually rendered. The defendant admits that the payment to Arch via electronic funds transfer also constitutes the transmissions of signs, signals, and pictures by means of wire communications in interstate commerce for the purpose of executing the scheme and artifice in violation of Title 18, United States Code, Section 1343.

3. **Waiver of Constitutional Trial Rights.** The defendant understands that she has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to

confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that she has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent her. The defendant understands that she has the right to persist in a plea of not guilty and, if she does so, she would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

4. **Additional Consequences**. The defendant understands that as a result of her conviction, she could be assessed the costs of prosecution and experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

5. **Statutory Penalties**. The defendant understands that Count One of the Indictment, Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, is a felony offense that carries the following statutory penalties:

    a.    a maximum of 20 years in prison;

    b.    a supervised release term of up to three years;

    c.    a maximum fine of $250,000;

    d.    restitution as agreed to by the parties in this agreement;

      e.      assessment to the defendant of the costs of prosecution, imprisonment, and supervision, as defined in 28 U.S.C. §§ 1918(b) and 1920; and

      f.      a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

6.    **Revocation of Supervised Release.** The defendant understands that if she were to violate any condition of supervised release, the defendant could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

7.    **Guidelines Calculations.** The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guidelines calculations. The parties stipulate to the following guidelines calculations:

      a.      Base Offense Level. The parties agree that the base offense level is 7. U.S.S.G. §§ 2X1.1(a); 2B1.1(a)(1).

      b.      Specific Offense Characteristics. The parties agree that the offense level should be increased by 6 levels because the offense involved a loss of more than $40,000. U.S.S.G. § 2B1.1(b)(1). The parties agree that no other specific offense characteristics apply.

      c.      Chapter 3 Adjustments. The parties agree that, other than acceptance of responsibility, no other Chapter 3 adjustments apply.

  d. <u>Acceptance of Responsibility</u>. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). However, the defendant understands and agrees that the government's recommendation is conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report.

  e. <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within her criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on her true criminal history category, and she will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

  f. <u>Guidelines Range</u>. If the adjusted offense level is 11, and the criminal history category is I, the Sentencing Guidelines range is **8 to 14 months of imprisonment**. This range falls in Zone B, which permits the sentence to include imprisonment, community confinement or home confinement.

  g. <u>Fine Range</u>. If the adjusted offense level is 11, the Sentencing Guidelines fine range is $4,000 to $40,000. U.S.S.G. § 5E1.2(c)(3).

  h. <u>Supervised Release</u>. The Sentencing Guidelines require a term of supervised release of at least one year up to a maximum supervised release term of three years. U.S.S.G. § 5D1.2.

8. **Discretion of the Court.** The foregoing stipulations are binding on the parties, but do not bind the Probation Office or the Court. The parties understand

6

that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court or the Probation Office determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

9. **Agreements as to Sentencing Recommendation.** The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw her guilty plea.

10. **Special Assessment.** The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to Guideline § 5E1.3. The defendant agrees to pay the special assessment prior to sentencing.

**Restitution Agreement.** The defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of her crimes as

7

provided by law. The defendant agrees that she owes restitution and agrees that the Court shall order her to pay restitution up to the total amount of $68,992 to the Minnesota Medicaid program. The parties agree to continue discussing the appropriate final amount of restitution and the government may—in its sole discretion—recommend a lesser amount of restitution be ordered at the time of sentencing.

11. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of her guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate her ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

12. **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes,

but is not limited to, the defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above 14 months' imprisonment. The defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence except the government may appeal the substantive reasonableness of a term of imprisonment below 8 months' imprisonment.

13. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

14. **Immigration Consequences.** The defendant understands that pleading guilty may have consequences with respect to her immigration status, including removal or deportation. The defendant understands that no one, including her attorney, the Assistant United States Attorney or the District Court, can predict to a certainty the effect of her conviction on her immigration status. Regardless of

any immigration consequences that may follow from her guilty plea, even automatic removal or deportation from the United States, the defendant still wishes to plead guilty as set forth in this agreement.

15. **Complete Agreement.** This, along with any agreement signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and the defendant.

ANDREW M. LUGER
United States Attorney

Date: 8/11/2022

BY: ANGELA M. MUNOZ
JORDAN L. SING
Assistant United States Attorneys

Date: 8/11/2022

UBAH HASSAN HAGI
Defendant

Date: 8/11/2022

JOSEPH T. DIXON
Counsel for Defendant